# In the United States Court of Federal Claims

No. 14-750

(Filed under seal: September 25, 2018)

(Reissued: October 10, 2018)

|  |  |  |
|---|---|---|
| **PANAGOULA E. BEKIARIS,** | ) ) | Vaccine claim; motion for review of special master's denial of an award of attorneys' fees and costs; reasonable basis for petition |
| Petitioner, | ) ) |  |
| v. | ) ) |  |
| **SECRETARY OF HEALTH AND HUMAN SERVICES,** | ) ) ) |  |
| Respondent. | ) ) ) |  |

Anthony F. Chapekis, Chapekis & Chapekis, Chicago, Ill. for petitioner.

Ann D. Martin, Senior Trial Attorney, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C., for respondent. With her on the brief were Chad A. Readler, Acting Assistant Attorney General, Civil Division, and C. Salvatore D'Alessio, Acting Director, Torts Branch, Catharine E. Reeves, Deputy Director, Torts Branch, Civil Division, and Alexis B. Babcock, Assistant Director, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**[1]

LETTOW, Senior Judge.

Pending before the court is plaintiff's motion for review contesting a denial of an award of attorneys' fees and costs attendant to a failed petition for compensation under the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, tit. III, §§ 301-323, 100 Stat. 3743, 3755 (1986) (codified, as amended, at 42 U.S.C. §§ 300aa-1 to 300aa-34) (the "Vaccine Act").

In August 2014, petitioner Panagoula E. Bekiaris filed a petition for compensation from the National Vaccine Injury Compensation Program. Ms. Bekiaris's petition was dismissed on November 21, 2017 for failure to prosecute under Vaccine Rule 21(b)(1). *Bekiaris v. Secretary of Health & Human Servs.*, No. 14-750V, 2017 WL 6419961 (Fed. Cl. Spec. Mstr. Nov. 21, 2017) ("Dismissal"). On May 18, 2018, petitioner sought an award of attorneys' fees and costs

---

[1]In accord with the Rules of the Court of Federal Claims, App. B ("Vaccine Rules"), Rule 18(b), this opinion and order was initially filed under seal. By rule, the parties were afforded fourteen days within which to propose redactions.

pursuant to Vaccine Rule 13. Pet'r's Mot. for Reasonable Att'ys' Fees & Costs ("Pet'r's Mot. for Fees") at 1, ECF No. 43. The Special Master denied the award of attorneys' fees and costs on June 28, 2018, after finding that the petitioner lacked a reasonable basis to bring her claim. *Bekiaris v. Secretary of Health & Human Servs.*, No. 14-750V, 2018 WL 3991220 (Fed. Cl. Spec. Mstr. June 28, 2018) ("Fee Denial"). On July 27, 2017, petitioner moved for review of the Special Master's denial pursuant to Vaccine Rule 23. Pet'r's Mot. for Review of Special Master's Fee Decision ("Pet'r's Mot. for Review "), ECF No. 48. The government, having taken no position in response to the initial motion for attorneys' fees and costs, *see* Resp't's Resp. to Pet'r's Appl. for Att'ys' Fees & Costs, ECF No. 45, responded in opposition to the petitioner's motion for review, *see* Resp't's Mem. in Resp. to Pet'r's Mot. for Review of Special Master's Fee Decision ("Resp't's Mem."), ECF No. 50. The court held a hearing on September 12, 2018.

The court concludes that the Special Master did not abuse her discretion in denying the award of attorneys' fees and costs. Therefore, the petitioner's motion for review is DENIED and the Special Master's denial of attorneys' fees and costs is AFFIRMED.

**BACKGROUND**

Ms. Bekiaris received the third of three injections of the human papillomavirus ("HPV") vaccine on August 25, 2011. *See* Pet. for Vaccine Compensation ("Pet.") ¶ 2; Med. Records Ex. 3, at 2-3, 4 (Patient Ledger from Parkside Pediatrics), ECF No. 13-2; Med. Records Ex. 5, at 6 (Transcribed Parkside Pediatrics' Chart Notes of Dr. Frank Roemisch), ECF No. 24-1. The following day, Ms. Bekiaris reported to her physician that she experienced hives the evening after the injection of the HPV vaccine. Med. Records Ex. 5, at 6. Medical records indicate additional calls relating to hives and skin irritation on four other occasions between August 27, 2011 and April 19, 2012. *Id*. Ex. 5, at 6-7.

Ms. Bekiaris consulted with her counsel, Anthony F. Chapekis, on May 27, 2014. *See* Pet'r's Mot. for Fees ¶ 1, Ex. A. On behalf of Ms. Bekiaris, Mr. Chapekis filed a petition on August 19, 2014 under the Vaccine Act alleging that Ms. Bekiaris was injured by the vaccine she received on August 25, 2011. Pet. ¶¶ 2-3.

Ms. Bekiaris subsequently filed medical records and an affidavit in support of her claim.[2] On November 26, 2014, Ms. Bekiaris provided dermatological records from April, June, and August 2013 and February 2014, Med. Records Ex. 2, handwritten pediatric records covering March 2009 through April 2012, *id*. Ex. 3, at 5-7, and immunization records, *id*. at 4. On February 10, 2015, Ms. Bekiaris provided dermatological records from January 2015. *Id*. Ex. 4. In July 2015, Ms. Bekiaris submitted an affidavit in support of her petition along with transcribed pediatrics records covering March 2009 through April 2012. *Id*. Ex. 5.

The Special Master explained to Ms. Bekiaris during a status conference in October 2015 that to meet her burden of proof, "[she] must submit an expert report providing evidence that the

---

[2]For a detailed discussion of the contents of the medical records, *see Bekiaris v. Secretary of Health & Human Servs.*, No. 14-750V, 2017 WL 3378776, at *1-3 (Fed. Cl. Spec. Mstr. July 10, 2017).

2

HPV vaccine was the cause of her injuries, and that her injuries lasted for more than six months." Fee Denial, 2018 WL 3991220, at *2; *see also* Order of Oct. 14, 2015, ECF No. 27.  Despite several promises by Ms. Bekiaris to provide an expert report and several extensions of time in which to do so, Ms. Bekiaris failed to provide the report.  *See* Fee Denial, 2018 WL 3991220, at *2.  In May 2017, the Special Master informed Ms. Bekiaris that if she did not file an expert medical report by July 13, 2017, the case would be dismissed for failure to prosecute.  *Id.*, at *3; *see* Order of May 5, 2017, ECF No. 32.

A week before the expert report deadline, petitioner moved for discovery of a sample of the HPV vaccine used in 2011, adverting to a change in vaccine formula as the basis for the motion.  Fee Denial, 2018 WL 3991220, at *3.  The Special Master denied the request as "not reasonable or necessary," opining that a medical expert must first "review petitioner's medical records and evaluate whether HPV vaccine can cause petitioner's alleged injuries." *Id.*, at *3; *see Bekiaris v. Secretary of Health & Human Servs.*, No. 14-750V, 2017 WL 3378776 (Fed. Cl. Spec. Mstr. July 10, 2017) ("Discovery Rejection").  The Special Master also found the request to be "another of petitioner's numerous efforts to delay resolution . . . by failing to file medical records and a medical expert report." Discovery Rejection, 2017 WL 3378776, at *4.  The Special Master then gave petitioner another extension, until November 17, 2017, to file an expert medical report. *Id.*, at *3; *see* Order of July 13, 2017, ECF No. 35.

On November 21, 2017, with no additional medical records or reports having been filed, the Special Master dismissed the case for failure to prosecute.  Dismissal, 2017 WL 6419961, at *3-4; *see also* Fee Denial, 2018 WL 3991220, at *3.

Ms. Bekiaris petitioned for reasonable attorneys' fees and costs on May 18, 2018.  Pet'r's Mot. for Fees; *see also* Fee Denial, 2018 WL 3991220, at *3.  She requested $19,630 for 70.3 hours of billable work incurred by Chapekis & Chapekis between May 27, 2014 and November 21, 2017, and for $164.73 in expenses.  Pet'r's Mot. for Fees at 2 & Ex A, at 8-9.[3]  In support of her request, Petitioner provided an itemization of expenses and legal services provided by Chapekis & Chapekis and an affidavit from her counsel.  *Id*. Ex. A (itemized invoice) & B (affidavit).

The Special Master denied the request for attorneys' fees and costs, Fee Denial, 2018 WL 3991220, identifying the relevant standard for awarding fees and costs to an unsuccessful petitioner as whether "the petition was brought in good faith and there was a reasonable basis for the claim." *Id.*, at *3 (citing 42 U.S.C. § 300aa-15(e)(1)(A)-(B); *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013)).  The Special Master found that the claim was made in good faith, as the standard is subjective, petitioners are entitled to a presumption of good faith, and there was no evidence of bad faith by Ms. Bekiaris.  *Id.*, at *3-4.  But, the Special Master found reasonable basis lacking. *Id.*, at *4.  The Special Master evaluated reasonable basis by looking "'not at the likelihood of

---

[3]The petition requests $7,192.50 for 20.55 hours of work performed by a senior attorney at $350 per hour and $12,437.50 for 49.75 hours of work performed by a junior attorney.  Pet'r's Mot. for Fees. Ex. A, at 9 & Ex. B ¶¶ 6-9.  The request also notes 20.3 hours of non-billable work. *Id*. Ex. A, at 9.  Expenses consist of the cost of mailing and of two requests for medical records. *Id*. Ex. A, at 8.

success . . . but more to the feasibility of the claim' [considering] factual basis, medical support, jurisdictional issues, and the circumstances [of filing]." *Id*., at *4 (citing *Turner v. Secretary of Health & Human Servs.*, No. 99-554V, 2007 WL 4410030, at *6-9 (Fed. Cl. Spec. Mstr. Nov. 30, 2007)) (internal citations omitted). It is "an objective inquiry unrelated to counsel conduct." *Id*., at *4 (citing *Simmons v. Secretary of Health & Human Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017)). Having found the claim lacked a reasonable basis, attorney fees were impermissible. *Id*., at *5. Petitioner responded by seeking review of the decision in this court. *See* Pet'r's Mot. for Review.

## STANDARDS FOR DECISION

A. *Standards for Review of a Decision by the Special Master*

"Upon the filing of a motion [for review] . . . , the United States Court of Federal Claims shall have jurisdiction to undertake a review of the record of the proceedings and may thereafter . . . set aside any . . . conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law." 42 U.S.C. § 300aa-12(e)(2); *see also Masias v. Secretary of Health & Human Servs.*, 634 F.3d 1283, 1287 (Fed. Cir. 2011).

Findings of fact by a Special Master are reviewed under the "highly deferential" arbitrary and capricious standard. *Masias*, 634 F.3d at 1287. "If the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Masias*, 634 F.3d at 1287-88 (quoting *Hines v. Secretary of Health & Human Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991)). Discretionary decisions are reviewed for abuse of discretion. *Id*. at 1288. Abuse of discretion exists when the "court's decision is clearly unreasonable, arbitrary, or fanciful," when based upon legal error, or when the findings are clearly erroneous or without rational support in the record. *Simmons*, 875 F.3d at 635 (citing *Hendler v. United States*, 952 F.2d 1364, 1380 (Fed. Cir. 1991)). Conclusions of law are reviewed de novo. *Id*. at 635; *Masias*, 634 F.3d at 1288.

B. *Attorneys' Fees For Unsuccessful Petitioners under 42 U.S.C. § 300aa-15(e)*

Attorneys may not charge vaccine petitioners for work performed to litigate petitions for compensation under the Vaccine Act. *See* 42 U.S.C. § 300aa-15(e)(3); *Cloer*, 569 U.S. at 373; *Raymo v. Secretary of Health & Human Servs.*, 129 Fed. Cl. 691, 701 (2016). For successful petitioners, "the special master or court shall [] award . . . reasonable attorneys' fees, and other costs, incurred in any proceeding on such petition." 42 U.S.C. § 300aa-15(e)(1). For unsuccessful petitioners, however, the "special master or court may award . . . reasonable attorneys' fees and other costs . . . if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim . . . ." 42 U.S.C. § 300aa-15(e)(1).

"Good faith" and "reasonable basis" are two distinct elements, both of which must exist to justify an award of fees and costs for an unsuccessful petition. *See Simmons*, 875 F.3d at 635.

4

While the good faith standard is subjective, reasonable basis is objective, *id*. at 635 (citing *Chuisano v. United States*, 116 Fed. Cl. 276, 289 (2014)), and "unrelated to counsel's conduct," *id*. at 636. Reasonable basis requires assessing the totality of the circumstances going to the merits of the claim, including the factual basis of the claim, medical support, and jurisdictional issues. *E.g.*, *Simmons v. Secretary of Health & Human Servs.*, 128 Fed. Cl. 579, 583 (2016), *aff'd*, 875 F.3d 632 (affirming the trial court's rejection of attorneys' fees using a totality of the circumstances test for reasonable basis when the circumstances relate to the claim's merits).[4]

In making discretionary fee award decisions, "trial courts may take into account their overall sense of a suit . . . [a]nd appellate courts must give substantial deference to these determinations, in light of 'the [trial] court's superior understanding of the litigation.'" *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). In discussing awards of attorneys' fees under 42 U.S.C. § 1988, the court opined that "[w]e can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it." *Id*. This deference applies in vaccine cases before a Special Master. *See Saxton v. Secretary of Health & Human Servs.*, 3 F.3d 1517, 1521 (1993) (quoting *Hensley*, 461 U.S. at 433-34) ("The trial forum 'has discretion in determining the amount of a fee award . . . [due to its] superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'"); *see also Kukreja v. Secretary of Health & Human Servs.*, 136 Fed. Cl. 431, 435 (2017) (quoting *Silva v. Secretary of Health & Human Servs.*, 108 Fed. Cl. 401, 405 (2012)) ("A special master's determination of attorneys' fees and costs is entitled to deference.").

**ANALYSIS**

Petitioners' motion for review argues first that the Special Master's decision was based on untimely filing of records, but that timeliness "does not speak to the attorney work involved." Pet'r's Mot. ¶ 11(A). Second, she argues that the claim was reasonable because allergic reactions began after the third vaccine injection, and such evidence appears in the medical records. *Id*. ¶ 11(B), (F). Third, the Special Master found the claim unreasonable in part because the required expert opinions necessary for causation could not be obtained once the Special Master denied Ms. Bekiaris's discovery request. *Id*. ¶¶ 11(D)-(F), 12-14.

The government responds that the Special Master afforded Ms. Bekiaris "ample time and opportunity" to provide medical records and expert opinions but that she "ultimately ignored the court-ordered deadline." Resp't's Mem. at 2. The government maintains the Special Master's conclusion that there was a "lack of any substantive support for the claims." It argues that

---

[4]In *Simmons*, the Special Master awarded attorneys' fees, finding that a reasonable basis existed when the petitioner contacted counsel ten days before the statute of limitations expired because not filing the complaint "would be tantamount to an ethical violation." *Simmons*, 128 Fed. Cl. at 582. On a motion for review, Judge Firestone of this court reversed and denied the award due to a lack of reasonable basis for want of medical evidence. *Id*. at 583-84. The court held that while the statute of limitations was part of the totality of the circumstances a Special Master must consider, it could not be the only factor. *Id*. at 583. The Federal Circuit excluded the statute of limitations from consideration of reasonable basis. *Simmons*, 875 F.3d at 636.

because petitioner's claim required proving actual causation, showing "temporal proximity between the vaccination and the onset of the alleged vaccine-related injury is . . . 'necessary, but not sufficient.'" *Id*. at 6 (quoting *Chuisano*, 116 Fed. Cl. at 287). Because petitioner failed to produce evidence relating to causation, the government argues that the claim cannot be objectively reasonable. *See id*. at 6, 9.

### A. Timeliness of Filing and Attorney Work

Petitioner's argument respecting timelines is predicated conceptually on the difficulty counsel had in obtaining evidence of causation. Pet'r's Mot. for Review ¶¶ 11-12. Attorney efforts bear on counsel's good faith, but those efforts are silent respecting whether the claim was objectively reasonable. *Compare Simmons*, 875 F.3d at 635-36 (concluding that reasonable basis was "unrelated to counsel's conduct," when counsel filed quickly to toll the statue of limitations despite lacking evidence), *with Chuisano*, 116 Fed. Cl. at 289-90 (holding that "counsel's activities can inform the totality of the circumstances that factor into a reasonable basis analysis," though also finding the Special Master did not "abuse[] his discretion by not crediting counsel for their work" and that "professional judgment of experienced attorneys" is not part of the reasonable basis analysis).[5]

The Special Master did base her denial in part on Ms. Bekiaris's delays in filing.[6] The petition was filed without medical records. This omission meant that a reasonable basis for the claim did not exist at the time of filing and had to be subsequently supplied. The delay in providing those records itself would be irrelevant to a reasonable basis inquiry if Ms. Bekiaris

---

[5]A lack of diligence filing a claim may, despite relating to an attorney's conduct, undercut an argument for reasonable basis. *See Rehn v. Secretary of Health & Human Servs.*, 126 Fed. Cl. 86, 93 (2016) ("If an attorney does not actively investigate a case before filing, the claim may not have a reasonable basis and so may not be worthy of attorneys' fees and costs."); *Chuisano*, 116 Fed. Cl. at 288 (noting that a "reasonable basis is lacking . . . when a petitioner's attorney does not properly investigate a case before filing it"); *Silva*, 108 Fed. Cl. at 405 (denying fees for failure to offer medical opinions and evidence on cause-in-fact in addition to counsel's lack of diligence).

[6]Ms. Bekiaris's counsel spent four hours reviewing medical records before filing the petition. Fee Denial, 2018 WL 3991220, at *4. Counsel "filed no medical records with [the] petition." *Id*. Her counsel, one month after filing the petition, indicated he was unable to file records because he lacked authorization to obtain Ms. Bekiaris's medical records. *Id*. It then took three-to-eleven months after the petition was submitted for petitioner to file three sets of medical records and her affidavits, and the Special Master found that the medical records provided "do not support [her] allegations." *Id*. The dermatological records showed a diagnosis of acne, and onset was prior to the vaccination. See Discovery Rejection, 2017 WL3378776, at *3; see also Hr'g Tr. 11:13-15 (Sept. 12, 2018). She failed to file expert medical opinions, despite the Special Master's direction to do so, promises by petitioner to comply, and extensions granted to permit compliance. Fee Denial, 2018 WL 3991220, at *4.

had eventually submitted sufficient records. *See, e.g., Chuisano*, 116 Fed. Cl. at 287. But, the delay, when coupled with the extensions granted to Ms. Bekiaris to obtain required medical evidence and the failure of Ms. Bekiaris to supply it, provides context for the Special Master's dismissal of the claim. And, it was not the delay that deprived the claim of a reasonable basis. The Special Master found that petitioner "had no reasonable expectation that she would prove that HPV vaccine caused her rashes and other alleged injuries when [they] were unsubstantiated by any medical records or medical opinion." Fee Denial, 2018 WL 3991220, at *5.

### B. The Causation Element of Rational Basis

For vaccines covered by the Vaccine Act, one of which is the human papillomavirus vaccine, the Act divides compensation eligibility into two categories. 42 U.S.C. § 300aa-11(c)(1)(C). A petitioner can show the onset of a specified condition within a specified time after receiving the vaccine, where the vaccine and condition are listed in the Vaccine Injury Table. 42 U.S.C. § 300aa-11(c)(1)(C)(i); *see also* HHS Vaccine Injury Table, 42 C.F.R. § 100.3. But, if a condition is not listed in the table or the onset of the condition is outside the specified time, the petitioner must show causation. 42 U.S.C. § 300aa-11(c)(1)(C)(ii). Once eligibility is shown, the petitioner must then show that the condition either lasted for more than six months after vaccination, or required hospitalization or surgery. 42 U.S.C. § 300aa-11(c)(1)(D).

At the time of petition in August 2014, the Vaccine Injury Table specified no conditions or onset times for the human papillomavirus vaccine. *See* HHS Vaccine Injury Table, 42 C.F.R. § 100.3(a) (2014). In 2017, three conditions for the vaccine were added, but these only apply to petitions filed on or after February 21, 2017. HHS Vaccine Injury Table, 42 C.F.R. § 100.3(e) (2017).[7] Therefore, Ms. Bekiaris's petition required her to prove actual causation to be eligible for compensation.

Because causation was a necessary element of Ms. Bekiaris's claim, she had to provide some evidence of a causal relationship between administration of the vaccine and her injuries to establish a reasonable basis for the claim. The type and amount of such evidence has never been delineated with specificity, and it can vary depending on the vaccine administered and the injury suffered. Nonetheless, it can be said with confidence that the quantum of evidence of causation to show reasonable basis is markedly less than that needed to prove entitlement. *See, e.g., Chuisano*, 116 Fed. Cl. at 287-88.

Proofs directed to causation necessarily focus on medical evidence. The Vaccine Act requires "supporting documentation" of vaccination and injury and, for conditions not listed in the vaccine table, those materials include "vaccination records . . . , pre- and post-injury

---

[7]These conditions are anaphylaxis with onset in less than four hours; shoulder injury with onset in less than 48 hours, and vasovagal syncope with onset in less than 1 hour. HHS Vaccine Injury Table, 42 C.F.R. § 100.3 (2017). "Anaphylaxis is an acute, severe, and potentially lethal systemic reaction that occurs as a single discrete event with simultaneous involvement of two or more organ systems." 42 C.F.R. § 100.3(c)(1) (2017). "Vasovagal syncope . . . means loss of consciousness (fainting) . . . ." 42 C.F.R. § 100.3(c)(13) (2017).

physician or clinic records . . . , [and] all post-injury inpatient and outpatient records . . . ." 42 U.S.C. § 300aa-11(c)(1), (2).  The Act also permits including "other available relevant medical records." 42 U.S.C. § 300aa-11(d); *see also* Vaccine Rule 2(c)(2)(A) (requiring medical records).  The Vaccine Act prohibits compensation for injuries "unsubstantiated by medical records or medical opinions." 42 U.S.C. § 300aa-13(a); *see also Chuisano*, 116 Fed. Cl. at 290 (affirming the denial of fees when "none of [the] medical records reflected a causal connection," none of the hospitalization or death records mentioned the vaccine, and "[none] of [the] treating providers were willing to attribute [the] injuries to the vaccination").  Overall, the Vaccine Act requires consideration of "relevant medical and scientific evidence contained in the record" in addition to the petitioner's medical records.  42 U.S.C. § 300aa-13(b); *see also Perreira v. Secretary of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (referring to "medical literature or studies"); *Rehn*, 126 Fed. Cl. at 93 (noting relevant "'voluminous' medical records").  In the circumstance of this case, to establish a reasonable basis for a claim, the evidence need only have been sufficient to give the petitioner a reasonable expectation of establishing causation.

Temporal proximity of a vaccine to the onset of symptoms, without more, fails to establish a reasonable basis for a vaccine claim.  Temporal proximity is a necessary part of the causation inquiry, *e.g.*, *Kukreja*, 136 Fed. Cl. at 437; *Chuisano*, 116 Fed. Cl. at 287, but "[t]emporal proximity is . . . not sufficient" by itself to provide reasonable basis for a claim where causation is required to be proven, *Chuisano*, 116 Fed. Cl. at 287.  In contrast, a causal analysis based solely on temporal proximity suffices for Vaccine Table claims because extensive medical studies have established the requisite connection.  For an off-Table case, that foundation is not available, and observed symptoms may have non-vaccine causes.  *See Chuisano*, 116 Fed. Cl. at 286.

In sum, to establish a reasonable basis for a claim, petitioner was obliged to adduce medical evidence going to causation beyond temporal proximity.

*C.  Sufficiency of the Medical Records in Providing a Rational Basis for Casuality*

Petitioner contends that the Special Master improperly restricted the medical evidence of causation she was allowed to produce.  Pet'r's Mot. for Review ¶ 11(D-F).  By mandating that Ms. Bekiaris produce an "expert report of Greek physicians" and then blocking a discovery request to obtain a version of the vaccine from 2011 sought by those physicians, Ms. Bekiaris contends that she was deprived of an ability to establish a reasonable basis.  *Id*. ¶¶ 11(D)-12; Hr'g Tr. 14:17 to 15:13 (Sept. 12, 2018).[8]

In her order denying fees and costs, the Special Master did note the failure to provide the promised expert opinion of a Greek immunologist.  Fee Denial, 2018 WL 3991220, at *4.  She did so in the context of petitioners' failure to provide other medical records that would link any alleged injury to the vaccine, whether from another immunologist or from any allergist, neurologist, psychologist, or psychiatrist.  *Id*., at *4.  The Special Master was not mandating

---

[8]Further citations to the transcript of the hearing held on September 12, 2018 will omit the date.

evidence from all those professionals, nor was she mandating the type of evidence these professionals had to provide. Rather, the Special Master gave petitioner options for the types of professionals whose opinions would be relevant to substantiate her allegations.

The Special Master did issue an order on July 13, 2017, in which she threatened to dismiss the case if Ms. Bekiaris "does not file [the Greek physician] Dr. Moissidis's records by November 17, 2017." Order of July 13, 2017 (summarizing status conference of July 13, 2017), ECF No. 35. This was the last order issued in the case prior to dismissal, coming nearly three years after the petition was filed and after repeated warnings by the Special Master regarding the absence of medical evidence of causation. At that point, petitioner's counsel had made several unfulfilled promises regarding records production, and several extensions of time had been granted to remedy the deficiency. *See* Order of May 5, 2017 (discussing time extensions), ECF No. 32; Order of July 14, 2016 (summarizing status conference of July 14, 2016, and granting a one-year extension to produce an expert opinion), ECF No. 31; Order of May 17, 2016 (summarizing status conference of May 17, 2016) (discussing Ms. Bekiaris's decision to forgo an expert opinion from a previously named physician and instead to seek an opinion from Dr. Moissidis), ECF No. 30. Apart from the order of July 13, 2017, no prior order indicates a limitation on what medical evidence Ms. Bekiaris could provide.

Further, the Special Master never required Ms. Bekiaris to *prove* causation to establish a reasonable basis; such a requirement would effectively bar recovery of attorneys' fees and costs for unsuccessful petitioners contrary to the statutory language. Rather, the Special Master sought "medical records or medical opinion[s]" that would give Ms. Bekiaris a "*reasonable expectation* that she would prove" causality. Fee Denial, 2018 WL 3991220, at *4 (emphasis added). The order denying discovery stated explicitly that Ms. Bekiaris "does not have [the] burden of identifying and proving a specific biological mechanism," the claimed reason behind the discovery request. Discovery Rejection, 2017 WL 3378776, at *5. Rather, "[the Greek immunologist] *or anyone else* who is petitioner's expert must review [her] medical records and evaluate whether HPV vaccine can cause [any of the alleged injuries] and, if so, that it did so in this case." *Id.* (emphasis added).

Petitioner's counsel indicated that he had informal or anecdotal evidence based on internet research linking the vaccine to her conditions, and that evidence establishes a reasonable basis for the claim. Hr'g Tr. 9:3-7, 13:15-20. Petitioner, however, did not provide this evidence to the Special Master. Hr'g Tr. 13:15-20. Because this evidence does not appear in the record, this court cannot consider whether it would have been sufficient to support a reasonable basis nor can it find fault with the Special Master's decision. Petitioner asserted that no opportunity existed to provide such informal evidence, especially because the Special Master insisted on specific medical evidence. Hr'g Tr. 13:21 to 14:18. Petitioner's counsel has a duty to protect and preserve the record for review or appeal, and there is no indication in the record that Ms. Bekiaris attempted to introduce such evidence into the record. *See* 42 U.S.C. § 300aa-13(b) (requires consideration of "relevant medical and scientific evidence contained in the record"). Further, there is no indication that the Special Master barred such evidence. The evidentiary direction from the Special Master indicated what type of evidence would be necessary to succeed on the merits, not as a limit to what could be provided.

The Special Master exhibited careful consideration of the medical records provided by Ms. Bekiaris. Both the opinion denying the discovery request and the opinion dismissing the petition review each entry on the medical records, creating a chronology of consultations, the underlying symptoms, the diagnosis, and the treatment. *See* Discovery Rejection, 2017 WL 3378776, at *1-3; Dismissal, 2017 WL 6419961, at *1-3. Apart from the pediatric records and the dermatological records, Ms. Bekiaris provided no other medical records.

The court in *Chuisano* faced a similar evidentiary record when it affirmed a denial of fees and costs. In *Chuisano*, a daughter had petitioned for compensation after her mother became ill several days after receiving a vaccination and subsequently died. 116 Fed. Cl. at 280. Like Ms. Bekiaris's injuries, the mother's illnesses were not listed in the Vaccine Injury Table, and thus the daughter was required to prove causation. *Id*. at 282. The Special Master noted that the daughter "offered only her own statement and evidence of temporal proximity," but "pointed to no medical records, nor . . . any expert opinion, to support a finding of causation in fact." *Id*. The daughter tried, unsuccessfully, to obtain favorable expert opinions regarding causation. *Id*. at 282, 291. The court in *Chuisano* agreed with the Special Master that "[w]ithout supportive evidence of causation-in-fact, petitioner lacked a reasonable basis for her claim." *Id*. at 283. For the same reasons, this court agrees with the Special Master in Ms. Bekiaris's case.

D. *Denial of the Discovery Request*

Petitioner's final set of arguments focuses on the Special Master's decision to deny her discovery request in a July 2017. Pet'r's Mot. for Review ¶¶ 11(D)-13. She avers that the expert report projected to be supplied by the Greek physicians could not be obtained because the Special Master denied a discovery request necessary for the experts to render their opinions. *Id*. ¶ 11(D)-(F). Petitioner argues that by preventing access to information needed to produce the reports, the Special Master in effect forestalled petitioner's effort to address causation. *Id*. ¶¶ 11(F)-13.

The Special Master denied the discovery request on July 10, 2017 and dismissed the case on November 21, 2017. A motion to review the Special Master's decision, including review of errors made during the proceedings, had to have been filed by December 21, 2017. But, petitioner never challenged the dismissal. Now, the propriety of the dismissal and the earlier discovery order is not being contested directly, but instead the discovery denial is raised as an issue tangentially bearing on the decision regarding fees and costs.

What remains, then, is whether the Special Master required an expert report with a specific conclusion to provide a reasonable basis of causation. If so, the subsequent issue is whether such a requirement is valid. Prior decisions regarding reasonable basis do not support mandating a specific expert medical report containing a particular opinion or conclusion regarding causation. A reasonable basis inquiry requires an analysis of factors, such as vaccination and onset records, treatment information, and medical support, and eschews a strict "evidentiary test." *See Simmons*, 128 Fed. Cl. at 583; *Chuisano*, 116 Fed. Cl. at 288, 290. Because this court has already held that the Special Master imposed no improper limits on what evidence petitioners had to produce to establish a reasonable basis, her denial of the discovery

10

request did not foreclose the only possible avenue by which petitioner could establish a reasonable basis.

## CONCLUSION

For the reasons stated, petitioner's motion for review of the Special Master's decision refusing to award attorneys' fees and costs decision is DENIED. The Special Master's decision is AFFIRMED. The clerk shall enter judgment accordingly.

It is so **ORDERED**.

                                                   s/ Charles F. Lettow
                                                   Charles F. Lettow
                                                   Senior Judge